UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                       :

MICHAEL K. SERVICE,                     :

                            Petitioner,      :

                                         :             17-cv-4941 (LJL)

        -against-               :

                                       :      MEMORANDUM AND

JOSEPH NOETH,                     :            ORDER

                                       :

                        Respondent.    :

                                       :

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/04/2024_

**LEWIS J. LIMAN, United States District Judge:**

Petitioner Michael Service ("Petitioner") filed this petition for writ of habeas corpus (the "Initial Petition") on June 29, 2017, and filed an amended petition on July 19, 2022 (the "Amended Petition" and collectively with the Initial Petition, the "Petition"). By Report and Recommendation dated October 6, 2023, Magistrate Judge Sarah Netburn recommended that the Petition be denied. Dkt. No. 55. On November 17, 2023, Petitioner filed written objections to the Report and Recommendation. Dkt. No. 58. Respondent replied by letter dated December 1, 2023. Dkt. No. 59. The Court has conducted a de novo review. For the following reasons, the Court adopts Judge Netburn's recommendation that the Petition be denied and that a certificate of appealability not be issued.

## BACKGROUND

The Court refers to the Report and Recommendation for a comprehensive description of the facts and procedural history of the case. Dkt. No. 55 at 1–10.

### A. The State Court Proceedings

Petitioner was convicted on January 13, 2011, by a jury in New York Supreme Court, New York County, on charges of second-degree murder in violation of N.Y. Penal Law §

125.25(1), assault in the first degree in violation of N.Y. Penal Law § 120.10(1), and two counts of second-degree criminal possession of a weapon in violation of N.Y. Penal Law § 265.03(1)(b). Dkt. No. 55 at 8. The trial evidence is summarized ably in Judge Netburn's Report and Recommendation. *Id.* at 5–8. Petitioner was sentenced to an aggregate term of imprisonment of 45 years to life. Dkt. No. 50 at 1.

Petitioner appealed to the Appellate Division, First Department. He sought relief on five grounds: (1) the trial court's improper admission of his pretrial confessions; (2) the trial court's failure to grant his motion to substitute counsel; (3) trial counsel's failure to move for an order of dismissal on the assault count and assertion of a justification defense; (4) the legal sufficiency of the evidence supporting his assault conviction; and (5) the court's unlawful imposition of consecutive sentences for murder and weapon possession. Dkt. No. 55 at 8. On March 31, 2015, the Appellate Division affirmed Petitioner's conviction but, consistent with the State's concession, agreed that the sentences for murder and weapon possession should run concurrently and not consecutively. *See People v. Service*, 6 N.Y.S.3d 246 (1st Dep't 2015).

Petitioner sought leave to appeal from the New York Court of Appeals on the same grounds. Dkt. No. 15 at 25; Dkt. No. 55 at 9. On April 5, 2016, the Court of Appeals denied Petitioner's application for leave to appeal. *See People v. Service,* 59 N.E.3d 1227 (N.Y. 2016).

B.  Petitioner's Habeas Corpus Petition

Petitioner filed his Initial Petition on June 24, 2017, proceeding pro se. Dkt. No. 1. In his Initial Petition, Petitioner sought relief on four grounds: (1) that the trial court improperly admitted his pretrial confessions; (2) that the trial court erred in denying his motion to substitute counsel; (3) that trial counsel was ineffective for failing to move for a trial order of dismissal on the assault count and for asserting a justification defense; and (4) that there was insufficient

evidence to support a finding of serious physical injury. *Id.* at 6. Respondent filed an answer to the Initial Petition on November 17, 2017. Dkt. No. 14.

On January 29, 2018, Petitioner moved the Court for a stay pending resolution of a petition for *coram nobis* he filed in state court. Dkt. No. 20. The *coram nobis* petition alleged that Petitioner's appellate counsel was ineffective for failing to argue that trial counsel had a conflict of interest and that the trial court abused its discretion by failing to conduct a sufficient inquiry into the conflict of interest and instead forcing Petitioner to proceed to trial with an attorney he did not trust. *Id*. On February 5, 2018, Magistrate Judge Netburn, to whom the case was referred, Dkt. No. 4, granted Petitioner's motion to stay his Petition pending the state court's resolution of the petition for *coram nobis*, Dkt. No. 21. On July 23, 2020, Judge Netburn lifted the stay after the parties informed the Court that the New York Court of Appeals had denied Petitioner's request for leave to appeal the denial of his *coram nobis* petition. Dkt. No. 35. Judge Netburn gave Petitioner leave to amend the Initial Petition to include the claims raised in his *coram nobis* petition. *Id.*

On September 16 and 18, 2020, counsel appeared on behalf of Petitioner, Dkt. Nos. 36, 39, and on December 3, 2020, counsel filed a motion to stay adjudication of the Petition in order for Petitioner to exhaust in state court the claims that counsel stated were potentially meritorious, Dkt. No. 44. Judge Netburn granted the motion on February 8, 2021. Dkt. No. 47. Judge Netburn also gave Petitioner leave to amend the Petition to include additional claims if the claims were rejected by the state court and gave Respondent the opportunity to argue that the amended claims did not relate back and were therefore untimely. *Id.*

Petitioner filed his Amended Petition on July 19, 2022. Dkt. No. 50. In addition to the four grounds alleged in the Initial Petition, Petitioner added arguments that appellate counsel was

ineffective for four reasons.  Dkt. No. 55.  Specifically, appellate counsel failed to argue (5) that Petitioner's statements should have been suppressed as the fruit of an unlawful arrest; (6) that the trial court unduly interfered with Petitioner's testimony; (7) that Petitioner's trial attorney was ineffective for disavowing parts of his testimony; and (8) that the trial court committed reversible error under *People v. O'Rama*, 579 N.E.2d 189 (1991).  Dkt. No. 55.

      C.  <u>Judge Netburn's Report and Recommendation</u>

      Judge Netburn recommended that the Petition be denied in its entirety.  Dkt. No. 55 at 27.

      Judge Netburn rejected the claim in the Initial Petition that the trial court erred in its admission of his confessions and the claim in the Amended Petition that appellate counsel was ineffective for failing to argue that his confession was the fruit of an unlawful arrest.  *Id.* at 17–21.  Construing liberally the confession allegations in the Initial Petition to raise both Fourth and Fifth Amendment claims, Judge Netburn concluded that the Fourth Amendment claim was barred by *Stone v. Powell*, 428 U.S. 465 (1976), because New York courts provided Petitioner with the appropriate corrective procedures to address an alleged Fourth Amendment violation and Petitioner had not shown an "unconscionable breakdown in the underlying process," Dkt. No. 55 at 18–19 (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).  Judge Netburn also concluded that Petitioner failed to make out that his confession was involuntary under the Fifth Amendment.  *Id.* at 20–21.  Judge Netburn found that the detectives who took Petitioner's confession had previously administered *Miranda* warnings to him, that he waived his rights orally and in writing, and that the warning and waiver remained valid through his second confession because circumstances had not changed between the two interrogations and Petitioner was warned in connection with both that his waiver and warning still applied.  *Id*.  Addressing one of the four points raised in the Amended Petition as properly relating back to the Initial

Petition, Judge Netburn concluded that appellate counsel was not ineffective for failing to argue that Petitioner's pretrial statements should have been suppressed, because the trial court did not err in admitting those statements. *Id.* at 25. Therefore, appellate counsel did not act unreasonably in not raising an argument that lacked merit and was weaker than those presented to the state court. *Id.*

Judge Netburn also recommended denial of Petitioner's claim that the trial evidence did not support a finding of serious physical injury beyond a reasonable doubt. *Id.* at 21–23. To the extent the claim could be construed to allege that the verdict was against the weight of the evidence, such claim sounded in state law and was not cognizable on federal habeas review. *Id.* at 21–22 (citing *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002)). To the extent that the claim could be construed to argue there was not legally sufficient evidence to support the jury verdict, it failed under the standard of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Id.* at 22–23. The evidence at trial was sufficient to show that Petitioner seriously injured his surviving victim who, according to the medical examiner, "could have died from his gun shot injuries, which included a severed large intestine in two places." *Id.* at 23.

Next, Judge Netburn concluded that Petitioner's two claims of ineffective assistance of trial counsel were without merit under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 23–25. Trial counsel's strategy of presenting a justification defense was reasonable, even if it ultimately failed, because it "explained how Petitioner could shoot two people, as he confessed at the precinct, without committing a crime." *Id.* at 24. Trial counsel was not ineffective for failing to move for an order of dismissal of the assault count because such motion would have been meritless. *Id.* at 24–25.

Finally, Judge Netburn decided that Petitioner's complaint that the trial court erred in denying his motion to substitute counsel on the eve of his trial lacked merit because Petitioner had only "common complaints" against counsel and failed to offer the trial court any legitimate reasons for his lack of confidence in his lawyer. *Id.* at 25–27.

The Court concluded that three of the four claims in the Amended Petition did not properly relate back to any of the claims in the Initial Petition and were therefore untimely and unreviewable on the merits. *Id*. at 13–14. Those three claims were that appellate counsel was ineffective for failing to argue that the trial court unduly interfered with Petitioner's testimony, that Petitioner's trial attorney was ineffective for disavowing parts of his testimony, and that the trial court committed reversible error under *People v. O'Rama*.

## LEGAL STANDARD

When reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties are given the opportunity to raise timely objections to the report and recommendation within 14 days. *Id*. The Court reviews any portion of the report subject to an objection *de novo*. In the absence of any objection, the Court reviews the report and recommendation only for clear error. Fed. R. Civ. P. 72(b) Advisory Committee Notes; *Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018). The Court will also review for clear error when "a party makes only conclusory objections, or simply reiterates a prior argument." *Moses v. Collado*, 2024 WL 3824066, at *1 (S.D.N.Y. Aug. 15, 2024) (quoting *Rios v. Kaplan*, 2023 WL 4348353, at *1 (S.D.N.Y. July 5, 2023)).

## DISCUSSION

Petitioner makes four substantive objections to the Report and Recommendation. He asserts that the Magistrate Judge improperly declined to address on the merits the claims that

appellate counsel was ineffective for failure to argue (1) that Petitioner was deprived of a fair trial by the trial court's questioning of him, Dkt. No. 58 at 4–11; (2) that the trial court erred in its handling of the juror notes in violation of *People v. O'Rama*, *id.* at 11–14; (3) that trial counsel was ineffective for taking a position in summation at odds with Petitioner's testimony regarding self-defense, *id.* at 14–16; and (4) that the police lacked probable cause for his arrest and that his statements therefore should not have been admitted at trial, *id.* at 16–19.[1] Petitioner also makes three cursory objections to Judge Netburn's recommendations as to Petitioner's claims of legal insufficiency, ineffective assistance of trial counsel, and improper denial of the motion to substitute counsel. *Id.* at 19–20.

For the reasons elaborated below, the Court finds that none of the objections are meritorious.

## I. Petitioner's claim of ineffective assistance of appellate counsel based on failure to challenge the trial court's questioning of petitioner was untimely.

Petitioner alleged in his Amended Petition that "appellate counsel was ineffective for failing to argue on appeal that defendant was deprived of a fair trial by the trial court's excessive interference during Petitioner's testimony, including its sua sponte cross-examination of him and openly opining on his lack of credibility." Dkt. No. 50 at 3. During Petitioner's direct and cross-examination at trial, the Court asked over 120 questions. Dkt. No. 50-1 at 21.[2] Certain of the

---

[1] Petitioner's Objection Four correctly notes that Judge Netburn did reach the merits of Petitioner's Fifth Amendment claim. Judge Netburn construed Petitioner's Initial Petition as raising both a Fourth and Fifth Amendment grounds for his summary claim: "trial court improperly admitted confessions." Dkt. No. 1 at 6. The Amended Petition only raises and briefs the Fourth Amendment claim, *see* Dkt. No. 50-1 at 51–53, and Petitioner's Objections only substantively dispute the Fourth Amendment analysis, see Dkt. No. 58 at 16–19. For completeness, the Court reviews both the Fourth and Fifth Amendment claims *de novo* below.
[2] The Court takes Petitioner's allegations as true. *See, e.g., Williams v. Noeth*, 2022 WL 2916338, at *1 (S.D.N.Y. July 25, 2022) (where habeas respondent asks for dismissal of petition, the court accepts "all facts alleged in the complaint as true and draw all reasonable inferences in

questions sought to clarify Petitioner's testimony regarding the events that took place before the shooting, while others pertained to Petitioner's post-arrest statements. *Id.* at 21–33. In his Amended Petition, Petitioner conceded that, during his testimony, he "was less than cooperative with the prosecutor," "attempted to insert explanations during [his] testimony," and was "somewhat defensive and evasive," but argued nonetheless that the "cumulative effect of the court's conduct during Petitioner's testimony deprived him of a fair trial under the state and federal constitutions." *Id.* at 33. Respondent replied that Petitioner's claim was untimely, unexhausted, and without merit. Dkt. No. 52 at 10, 23–30. It argued that "claims of ineffective assistance of appellate counsel circa 2013-2015 involve legal analysis and operative facts that are distinct from the claims raised in the petition about events and proceedings that took place between 2008 and 2010." *Id.* at 10. It also argued that the trial court's questions were appropriate to clarify Petitioner's testimony, *id.* at 25–28, and that appellate counsel acted reasonably and understandably in not drawing the attention of the Appellate Division to petitioner's perjurious trial testimony, which a judicial interference claim would have done, *id.* at 30.

Judge Netburn concluded that Petitioner's ineffective assistance of appellate counsel claim relating to the trial court's questions was untimely because it was "entirely unrelated to the facts presented in the original petition," and because Petitioner presented no basis for equitable tolling. Dkt. No. 55 at 13–14. Petitioner argues that Judge Netburn's recommendation is in error, but he does not identify any error made by the Magistrate Judge and, in fact, merely reiterates the arguments he made in his memorandum of law submitted to Judge Netburn.

---

the plaintiff's favor" (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008))); *Mears v. Graham*, 2014 WL 4060022, at *7 (S.D.N.Y. Aug. 14, 2014); *Brodie v. Pliler*, 2022 WL 16751908, at *2 (S.D.N.Y. Nov. 7, 2022).

*Compare* Dkt. No. 58 at 4–11 *with* Dkt. No. 50-1 at 13–39.  The Magistrate Judge did not

commit an error of law.  Petitioner's ineffective assistance of appellate counsel claim relating to

the trial judge's questioning is time-barred.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which

governs federal habeas corpus review, *see Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001), an

application for a writ of habeas corpus to a state court must be filed within one year of the date

on which the judgment becomes final, generally upon the later of the conclusion of direct review

or the expiration of the time for seeking such review, *see* 28 U.S.C. § 2244(d)(1)(A); *Aparicio*,

269 F.3d at 89.  Petitioner's judgment became final 90 days from the date the New York State

Court of Appeals denied leave to appeal—i.e., after the "period to petition for a writ of certiorari

to the United States Supreme Court." *Pratt v. Greiner*, 306 F.3d 1190, 1195 n.1 (2d Cir. 2002);

*Chrysler v. Guiney*, 14 F. Supp. 3d 418, 433 (S.D.N.Y. 2014), *aff'd*, 806 F.3d 104 (2d Cir. 2015).

The Court of Appeals denied leave to Petitioner on April 5, 2016, so Petitioner's one-year

limitation period began on July 4, 2016, 90 days later, and ended on July 4, 2017.  Dkt. No. 55 at

12.  Petitioner's Amended Petition was filed on July 19, 2022.  Petitioner does not dispute that

the claims in the Amended Petition were timely only if they "related back" to the Initial Petition

or if the time for Petitioner to file was equitably tolled.  *See Gibson v. Artus*, 407 F. App'x 517,

519 (2d Cir. 2010); *Ozsusamlar v. United States*, 2013 WL 4623648, at *3 (S.D.N.Y. Aug. 29,

2013).

An amended claim "relates back" to the original petition, "when . . . the

claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence

set forth or attempted to be set forth in the original pleading." *Mayle v. Felix*, 545 U.S. 644, 649

(2005) (quoting Fed. Rule Civ. Proc. 15(c)(2)).  Under the rule, "[e]ach separate congeries of

facts supporting the grounds for relief . . . delineate[s] an 'occurrence.'" *Mayle*, 545 U.S. at 661. The test is whether the claims in the original petition and in the amended petition "are tied to a common core of operative facts." *Id.* at 664; *see also id.* at 659. It is not enough for the claims to "simply come from the same 'trial, conviction, or sentence.'" *Id.* at 662–64. An amended petition does not relate back to the original petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

Under these standards, Petitioner's ineffective assistance of appellate counsel claim with respect to trial court questioning does not relate back to any claim asserted by Petitioner in the Initial Petition. The Initial Petition raised only four grounds: (1) that the trial court improperly admitted his pretrial confessions; (2) that the trial court erred in denying his motion to substitute counsel; (3) that trial counsel was ineffective for failing to move for a trial order of dismissal on the assault count and for asserting a justification defense; and (4) that there was insufficient evidence to support a finding of serious physical injury. Dkt. No. 1 at 6. Petitioner argues here, as he did to Judge Netburn, that the ineffective assistance of appellate counsel claim based on the trial court questioning relates back to his claim regarding the admission of the pretrial confessions because "[b]oth claims fundamentally centered on the Petitioner's version of the events, and inevitably colored assessments of his credibility as a witness." Dkt. No 58 at 5.

The fact that Petitioner's new claim and those in his Initial Petition both relate to his version of events and his credibility as a witness is insufficient to establish that the two claims arise from the same "congeries" of facts. Every trial, by its nature, presents a contest between two competing versions of events. When the defendant testifies, that contest inherently requires the jury to make an assessment of the defendant's credibility as a witness; the jury is called upon

to accept either the defendant's version or that of the prosecution.  The central point of *Mayle*,

however, is that two claims do not relate to one another simply because they both arise out of the

same trial.  "An approach of that breadth" would be "boundless" and "views 'occurrence' at too

high a level of generality."  *Mayle*, 545 U.S. at 661 (quoting *United States v. Pittman*, 209 F.3d

314, 318 (4th Cir. 2000)); *see also Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010)

(claims relate to one another when they arise from the "same core facts" and not when they relate

generally to the same trial).

Petitioner's pretrial confession claim and his claim related to the trial judge's questioning

do not arise from the "same core facts" and are disconnected in time and type.  His claim

regarding the admission of his pretrial confessions turns upon events that happened at the

stationhouse—whether and when he was administered his *Miranda* rights and whether his

confession was coerced in violation of the Fifth Amendment.  *See Mayle*, 545 U.S. at 660

(characterizing the petitioner's confession claims as turning upon the location where the

confession took place).  Although Petitioner's Fifth Amendment claim "did not ripen until his

statements were admitted against him at trial," the "essential predicate" for that claim was the

"out-of-court police interrogation."  *Id.* at 661.  By contrast, the "dispositive question," *Mayle*,

545 U.S. at 661, with respect to Petitioner's claim regarding the trial court's questioning turns in

substantial part upon occurrences at trial—whether the court abdicated its impartial role and took

"over the role of the prosecutor and display[ed] bias."  *United States v. Filani*, 74 F.3d 378, 385

(2d Cir. 1996); *Ramos v. Racette*, 2012 WL 12924, at *18 (E.D.N.Y. Jan. 4, 2012), *aff'd*, 726

F.3d 284 (2d Cir. 2013).  If the court did not abdicate its impartial role, there would have been no

basis to raise the issue on appeal.  That claim does not turn at all on what happened at the

stationhouse on the day of Petitioner's interrogation.

The Magistrate Judge also did not err in her conclusion that the limitations period was not equitably tolled. In order to invoke equitable tolling, a petitioner must show, "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner must show a causal relationship between the extraordinary circumstance and the failure to timely file the petition, *see Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (citing *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)), and that despite his reasonably diligent efforts during the period he seeks to toll, extraordinary circumstances prevented him from filing his petition in a timely manner, *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003). Equitable tolling is available only in "extraordinary circumstances," where strict adherence to the limitations period would create "an *unreasonable* burden." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (first quoting *Rodriguez v. Artuz*, 990 F. Supp. 275, 282–83 (S.D.N.Y. Jan. 8, 1998) and then quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Petitioner argues that the court should have applied equitable tolling because he proceeded on a *pro se* basis, without a complete high school education, and he retained counsel when his family was able to obtain the resources to do so. Dkt. No. 58 at 10. He further argued that he timely raised in his Initial Petition claims that relate to the same constitutional Amendment (the Sixth Amendment as incorporated by the Due Process Clause) to which the claim in his Amended Petition relates. *Id*. Those arguments are unavailing. Whether circumstances may be considered "extraordinary" depends upon how significant an obstacle petitioner faces to complying with the limitations period. *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (citing *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir.2008)). The Second Circuit sets a

"high bar" for finding circumstances to be "extraordinary" enough to merit equitable tolling. *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). "[T]he mere fact that a petitioner is proceeding pro se and may be ignorant of the law is not a sufficient ground for equitable tolling." *Alvarez v. United States*, 2019 WL 1428350, at *5 (S.D.N.Y. Mar. 29, 2019); *see also Smith*, 208 F.3d at 18 (holding that Petitioner's pro se status "does not merit equitable tolling."); *Gillyard v. Herbert*, 2003 WL 194692, at *3 (S.D.N.Y. Jan. 30, 2003) ("A petitioner's pro se status does not by itself merit equitable tolling."). Nor is it sufficient that Petitioner lacked a complete high school education and did not have the resources to hire counsel. The Sixth Amendment and Due Process Clause do not accord a prisoner the right to counsel on post-conviction review, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and many prisoners (often without a complete high school or a college education) lack the resources to hire counsel on their own. Those circumstances are unfortunate but not exceptional. *See Bower v. Walsh*, 703 F. Supp. 2d 204, 220 (E.D.N.Y. 2010) ("[E]ven a petitioner's 'pro se status does not in itself constitute an extraordinary circumstance meriting tolling.'") (quoting *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir.2004)); *see also Ayala v. Miller*, 2004 WL 2126966, at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's pro se status, nor his lack of legal expertise, provides a basis for equitable tolling of AEDPA's statute of limitations."); *Santillan v. United States*, 2024 WL 4276183, at *7 (S.D.N.Y. Sept. 24, 2024) (finding petitioner not entitled to equitable tolling "simply because he is incarcerated and faced the routine restrictions of prison life"). Finally, it would not be enough, even if it were accurate, that Petitioner's Initial Claim and his Amended Claim rest upon the same constitutional right. *See Ozsusamlar*, 2013 WL 4623648, at *4 (holding claim time-barred where "[Petitioner's] original petition argued that his counsel was ineffective for failing to present mitigating factors *at sentencing*, but his new claims assert that counsel was ineffective

for failing to move to suppress evidence and failing to confront several witnesses *at trial*"); *Veal v. United States*, 2007 WL 3146925, at *6 (S.D.N.Y Oct. 9, 2007) (no relation back where ineffective assistance of counsel claims in the petition related to strategic decisions during trial, but the claims in the proposed amendment were based on conduct during pretrial negotiations). Petitioner's claim in his Initial Petition was that trial counsel was ineffective in one particular respect; his claim in the Amended Petition is that appellate counsel was ineffective in other respects.

## II.    Petitioner's claim that appellate counsel was ineffective for failing to raise the jury notes issue on appeal was untimely.

Petitioner asserted in his Amended Petition that "appellate counsel was ineffective in failing to argue that the [t]rial court erred in its handling of virtually all jury notes under *People v. O'Rama* and *United States v. Ronder*, thereby depriving Petitioner of a fair trial."  Dkt. No. 50 at 2.  According to Petitioner, at several points during the deliberations, the trial court failed to read a juror note verbatim into the record and responded (or decided how to respond) to the juror note without consulting with counsel in advance.  Dkt. No. 50-1 at 35–46.  Respondent answers that this claim does not relate back, *see* Dkt. No. 52 at 13–14 (characterizing Petitioner's argument as "little more than a rewording of the rejected standard that any claim arising from the same proceedings at issue in a petition relates back to the petition"), and that, in any event, the trial court meticulously followed the appropriate guidelines in informing the parties of juror notes, *id.* at 36.  Judge Netburn also found that this claim was untimely.  Dkt. No. 55 at 13.

Petitioner summarily asserts: "For the same reasons stated in Objection One, … the Magistrate Judge was incorrect in determining that this issue was time-barred and thus could not be addressed on the merits of the claim."  Dkt. No. 58 at 11.  But this claim is even further afield of anything raised in the Initial Petition.  The Initial Petition did not raise any questions

regarding jury deliberations or the court's handling of the jury.  The claim does not relate back and Petitioner has provided no basis to invoke principles of equitable tolling.

III.    **Petitioner's claim that appellate counsel was ineffective for failing to claim that trial counsel was ineffective for taking a position in summation inconsistent with Petitioner's trial testimony was untimely.**

Petitioner's third objection is that the Magistrate Judge erred in failing to address on the merits the claim that appellate counsel was ineffective for not raising on direct appeal the claim that trial counsel was ineffective in his summation at trial.  Dkt. No. 50 at 14.  Petitioner claims that trial counsel was ineffective for acknowledging in summation that Petitioner's testimony sounded "incredible" before pivoting that the testimony "isn't as crazy as it sounds," and therefore that appellate counsel was ineffective in not raising that claim of ineffective assistance of trial counsel on appeal.  Dkt. No. 50-1 at 48–49.  Respondent asserts again that the claim is time-barred.  Dkt. No. 52 at 14.  Respondent also points out that counsel simply acknowledged the physical reality that Petitioner would not have shot his victim in the back, as the evidence at trial established, if—as Petitioner testified—he was facing the victim at the time he shot him.  *Id.* at 32.  Respondent argues trial counsel's statement that Petitioner was confused was "simply attempting to reconcile petitioner's testimony with the credible, objective proof."  *Id.*

Judge Netburn found that this claim was time-barred because "while Petitioner did raise an ineffective assistance of trial counsel argument, the focus of that claim was not on counsel's summation."  Dkt. No. 55 at 13.  Though Petitioner objects that this claim should not be time-barred, his Objections simply relay the exact words of the Amended Petition, which are themselves conclusory.  *Compare* Dkt. No. 58 at 6 ("[O]n its face, the claim in the amended petition that counsel was ineffective for taking a position at odds with Petitioner's testimony regarding self-defense relates both to the overall circumstances of Petitioner's testimony and to the argument raised in the initial petition that trial counsel was ineffective with respect to his

advancing a justification defense") *with* Dkt. No. 50-1 at 21.  Because this restatement is

conclusory, the Court reviews only for clear error, *Moses*, 2024 WL 3824066, at *1 (quoting

*Rios* 2023 WL 4348353, at *1), and finds none.

It is telling that Petitioner does not elaborate on his original justification claim in either

his Amended Petition or his Objections.  The claim in his Initial Petition is that his trial counsel

was ineffective *because* he asserted a justification defense, *see* Dkt. No. 1 at 6, whereas the claim

in his Amended Petition is that appellate counsel was ineffective for failing to raise that trial

counsel's summation was ineffective because trial counsel *undermined* Petitioner's justification

defense, *see* Dkt. No. 50-1 at 48–49.  These two claims are related only in the sense that they

both relate to counsel's trial strategy, but they otherwise assert different grounds for relief, which

would need to be supported by different facts.  Petitioner's ineffective assistance claim in the

Initial Petition relating to the justification defense turns under the Sixth Amendment on the

availability of an alternative defense, such as mistaken identity or alibi, that might have been

more effective but that trial counsel overlooked.  *See United States v. Danskoi*, 2023 WL

4198735, at *6 (S.D.N.Y. June 27, 2023) (ineffective assistance claim based on trial decisions

requires evidence of omissions that arise from "oversight, carelessness, ineptitude, or laziness").

The relevant facts would relate to counsel's investigation of the Petitioner's case prior to trial.  It

raises exclusively a Sixth Amendment question and not a New York state constitutional question.

The summation claim in the Amended Petition does not rest on whether there existed an

alternative defense that counsel should have investigated and presented.  Instead, it turns on how

counsel handled the evidence at trial and whether there was a different way to handle Petitioner's

testimony that counsel overlooked through "oversight, carelessness, ineptitude, or laziness."

*Danskoi*, 2023 WL 4198735, at *6.

Petitioner's amended claim did not elaborate or clarify a claim that was made in a summary way in the Initial Petition, which might have sufficed to relate back. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2000) (assuming arguendo that the amended petition related back to the original petition when it sought to provide additional evidence in support of the original petition's claims); *Murray v. Booker*, 2009 WL 415711, at *2 (E.D. Mich. Feb. 19, 2009) (claim that insufficient evidence existed that petitioner assaulted victim related to claim that insufficient evidence existed that petitioner assaulted victim with intent to kill). For the reasons stated above, Judge Netburn did not clearly err in concluding that the two claims were related "at too high a level of generality," *Mayle* 545 U.S. at 661, to permit relation back.

Moreover, even if the Court were to review the claim on the merits, Petitioner would not prevail. In his Amended Petition, Petitioner argues that:

> [T]rial counsel stated during jury selection that this case was one of self-defense. Similarly, his opening statement previewed a self-defense claim. Petitioner testified at trial that he acted in self-defense. Yet, in summation, counsel disavowed critical portions of Petitioner's testimony. Specifically, in referencing Petitioner's testimony that he was surrounded by, among others, Recio and Charles "Smash" McCoy who pulled a gun, counsel stated "Now, at this point his testimony becomes incredible. My client's testimony becomes incredible. I, for example, don't understand how people can circle him in a matter of feet away. . ." And while counsel then tried to pivot and argue that, perhaps Petitioner was confused because "things happened so fast," and that, "my client's testimony isn't as crazy as it sounds," this portion of trial counsel's summation was devastating to Petitioner.

Dkt. No. 50-1 at 48–49 (internal citations omitted). In asserting that trial counsel was ineffective at summation and that appellate counsel was ineffective in not raising trial counsel's ineffectiveness, Petitioner has two steep hills to climb. To establish a claim of ineffective assistance of counsel under the *Strickland* standard, Petitioner must show that counsel's assistance fell below an objective standard of reasonableness and that, but for counsel's deficient conduct, there is a reasonable probability that the result of the proceeding would have been

17

different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Although the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). The court "indulge[s] a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Strickland,* 466 U.S. at 689). Counsel need not "raise every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533; *see also United States v. Barrett*, 102 F.4th 60, 72 (2d Cir. 2024). "To establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." *Lynch*, 789 F.3d at 311.

A defendant in New York state court also has a steep hill to climb in asserting ineffective assistance of counsel under either state constitutional or federal constitutional law. The two standards differ in some respects. Under the United States Constitution, the "[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." *Acevedo v. Capra,* 600 F. App'x 801, 803 (2d Cir. 2015). (quoting *Mason v. Scully,* 16 F.3d 38, 42 (2d Cir. 1994)). "A defendant may establish ineffective assistance, however, where counsel made 'omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness.'" *Danskoi,* 2023 WL 4198735, at *6 (quoting *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009)) (cleaned up).

New York law is "more protective than the Federal standard because 'even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial.'" *Debellis*, 225 N.E.3d at 862 (quoting *People v. Caban,* 833 N.E.2d 213, 222 (2005)). Under the *Baldi* standard, a defendant is deprived of the effective assistance of counsel under the New York State Constitution when he is deprived of "meaningful representation." *People v. Baldi*, 429 N.E.2d 400, 405 (1981). New York law still requires a defendant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," *People v. Honghirun*, 78 N.E.3d 804, 807 (2017), by "demonstrate[ing] the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct," *Debellis*, 225 N.E.3d at 862. The main difference between federal and New York law, which is immaterial in this case, is that ineffectiveness under New York law does not require a showing of prejudice.

The Court has reviewed the summation made by Petitioner's trial counsel, Mr. Levenson, *see* Dkt. No. 44-10 at 321–360, as well as the testimony of Petitioner on the witness stand, *see id*. at 137–295. Petitioner has not shown that trial counsel's conduct fell short of federal or state constitutional standards such that appellate counsel was ineffective in failing to raise the point on appeal. The Court agrees with Respondent that trial counsel made a reasonable strategic choice to acknowledge the substantial gaps between Petitioner's testimony on the witness stand, his prior statements in evidence, testimony from witnesses, and medical evidence. Petitioner had meaningful representation. Trial counsel was faced on summation with significant challenges. Petitioner's trial testimony directly contradicted two previous confessions on several key points, and one of his confessions was recorded on video. *See* Dkt. No. 55 at 4. In addition, Petitioner claimed in his trial testimony that Charles "Smash" McCoy brandished a gun at him, but three

19

witnesses at trial testified that McCoy was not present at the time of the shooting. *See* Dkt. No. 44-8 at 401–02; Dkt. No. 44-9 at 7, 332, 380–84, 389–90. Trial counsel's strategy appears to have been to situate his client's lack of credibility in context with the credibility problems of the other witnesses from the scene of the shooting. In his summation, he tried to convince the jury that it was reasonable given the shared norms of the Polo Grounds Complex for Petitioner to retrieve a gun in anticipation of being attacked, and that it was credible Petitioner was threatened with a gun by one of the victims' companions, McCoy, despite witnesses' testimony to the contrary. Though Mr. Levenson's strategy was ultimately unsuccessful, it was not an unreasonable strategy given the overwhelming evidence contravening his client's sworn testimony, nor does anything in counsel's summation suggest "oversight, carelessness, ineptitude, or laziness." *Danskoi,* 2023 WL 4198735, at *6. Petitioner's claim of ineffective assistance of counsel with respect to his trial counsel's summation would therefore be without merit under *Strickland v. Washington*, 466 U.S. 668 (1984) and under its New York counterpart in *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981), meaning that it was likewise reasonable for Petitioner's appellate counsel to choose not to raise this instance of ineffectiveness on appeal. *See Clanton v. Rivera*, 2008 WL 2839712, at *26 (S.D.N.Y. July 22, 2008) (finding with respect to defense counsel's summation that "the decision whether to pursue a particular defense is a tactical choice which does not rise to the level of a constitutional violation. . . . [T]he habeas court will not second-guess trial strategy simply because the chosen strategy has failed.") (cleaned up), *report and recommendation adopted*, 2010 WL 1685414 (S.D.N.Y. Apr. 22, 2010).

**IV.  Petitioner's claim that appellate counsel was ineffective for failing to argue that the police lacked probable cause to arrest Petitioner and that the trial court erred in admitting his post-arrest statements is without merit.**

Petitioner asserts in his Amended Petition that appellate counsel was ineffective for failing to argue that the police lacked probable cause to arrest him based on unverified and

uncorroborated anonymous tips and that, as a result, the trial court erred in admitting his inculpatory statements at trial. Dkt. No. 50 at 3. Judge Netburn held that this claim related back to Petitioner's claim in the Initial Petition that his post-arrest statements were improperly admitted at trial. Dkt. No. 55 at 13; *see also Serrano v. Burge*, 2005 WL 2063765, at *4 (S.D.N.Y. Aug. 22, 2005) (holding that failure of appellate counsel to raise Fourth Amendment claim relates back to claim of Fourth Amendment violation), *report and recommendation adopted*, 2005 WL 2170362 (S.D.N.Y. Sept. 8, 2005). Judge Netburn then concluded that Petitioner's confession was not involuntary and that appellate counsel was not ineffective for failure to raise a meritless Fifth Amendment claim, but did not analyze Petitioner's Fourth Amendment claim on the merits. Petitioner argues that Judge Netburn erred by failing to consider this claim on the merits. Dkt. No. 58 at 16-17. He also argues that the judge erred in concluding that his statements were not involuntary under the Fifth Amendment. *Id.* at 18-19.

### A.    Fourth Amendment Analysis

Petitioner is correct that, having concluded that Petitioner's ineffective assistance claim with respect to the Fourth Amendment issue was timely, Judge Netburn neglected to analyze whether counsel should have raised that issue on appeal. Judge Netburn expressly considered only whether Petitioner's Fourth Amendment claim could be raised on habeas review under the rule of *Stone v. Powell*, not whether the underlying claim had such merit that it would have been unreasonable for appellate counsel to have raised it on direct appeal. Because the claim in the Amended Petition is a claim of ineffective assistance, not a direct claim of a Fourth Amendment violation, *Stone* does not bar the claim. On the merits, however, the claim fails.

It was reasonable for appellate counsel not to raise a Fourth Amendment unlawful seizure claim on appeal. After a hearing, the trial court concluded that "[m]ore than sufficient probable cause existed for the detention of Michael Service." Dkt. No. 14-1 at 13. In arresting Petitioner,

the police did not rely upon an uncorroborated tip of an anonymous informant.  Shortly after the

shooting, a night watch detective spoke to the surviving victim of Petitioner's attack and learned

that he had been shot by a dark-skinned male black man wearing a dark "hoody."  *Id.* at 12.

After learning that information, the New York Police detective then spoke to the sister of the

deceased victim and saw the sister speak to someone who told her that the shooter was "Slob

Bob," whose real name was Michael Service.  *Id.*  The sister viewed a mug shot of Michael

Service and confirmed that this was "Slob Bob," thus corroborating details of the informant's

story.  *Id.* at 12–13.  The identification was also corroborated by the police database, which

indicated that Service resided within the Polo Grounds Complex in the Bronx where the shooting

occurred.  *Id.*  The state court also found that, before making the arrest, the New York Police

detective watched a video surveillance tape of the lobby of Petitioner's building and saw a dark-

skinned black male wearing a dark hoodie, who appeared to be Petitioner, hand a semiautomatic

firearm to another man, further corroborating the accounts of both the surviving victim and of the

informant who spoke to the sister.  *Id.*  At this point, another anonymous caller reported to the

detectives that Petitioner was in an apartment in the Polo Grounds Housing Complex.  *Id.*

Finally, the state court found that when the police arrived at the apartment where Petitioner was

located, he "was hiding in a couch, a factor which was also properly considered as a factor

contributing to probable cause."  *Id.*  It was not error for appellate counsel not to raise an issue

that was a sure to lose.

### B.    Fifth Amendment Analysis

Judge Netburn did not err in her conclusion that Petitioner's statements to police were not

involuntary and that it was therefore reasonable for appellate counsel to decline to raise that issue

on appeal.  The Supreme Court has held that whether a confession was voluntary is judged on the

"totality of the circumstances."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Arizona*

*v. Fulminante*, 499 U.S. 279, (1991).  In evaluating the totality of the circumstances, courts consider factors such as "the accused's age, his lack of education or low intelligence, the failure to give *Miranda* warnings, the length of detention, the nature of the interrogation, and any use of physical punishment." *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989).  The totality of the circumstances test also includes "1) the accused's characteristics, 2) the conditions of the interrogation, and 3) the conduct of the police." *Parsad v. Greiner*, 337 F.3d 175, 183 (2d Cir. 2003) (citing *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir.1991)).

Petitioner objects to Judge Netburn's conclusion that "under the totality of the circumstances, the failure of investigators to renew Miranda warnings to Petitioner during a subsequent investigation, [was not] in violation of clearly established Supreme Court law in *Miranda v. Arizona*." Dkt. No. 58 at 19.  The objection is without merit.  The Supreme Court has held that after an initial *Miranda* warning, another warning need not be administered to the Petitioner "unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." *Wyrick v. Fields*, 459 U.S. 42, 47 (1982) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)).  In the Second Circuit, factors relevant to whether circumstances have sufficiently changed are "(1) the length of time between interrogations; (2) whether the defendant was in continuous custody; (3) and whether the focus of the interrogations remained the same." *Williams v. Lee*, 2019 WL 935958, at *7 n.5 (S.D.N.Y. Feb. 26, 2019) (citing *Zapulla v. New York*, 391 F.3d 462, 474 (2d Cir. 2004)).

The Court has independently reviewed the record of the state trial and agrees with Judge Netburn.  As Judge Netburn found, Petitioner was administered *Miranda* warnings and signed a waiver during his initial interrogation.  Between Petitioner's first and subsequent interrogations,

circumstances had not "changed so seriously that his answers [were] no longer voluntary" or he was "no longer . . . making a knowing and intelligent relinquishment of his rights." *Wyrick*, 459 U.S. at 47 (internal citations and quotations omitted). Petitioner was given a pre-printed form that explained his *Miranda* rights before the first interrogation. Dkt. No. 44–7 at 71–73. The detective who conducted the interrogation also read the *Miranda* form out loud to Petitioner and verified that Petitioner understood his rights. *Id*. Petitioner agreed to answer the detectives' questions and signed the *Miranda* form, thereby waiving his *Miranda* rights both orally and in writing. *Id*. Detectives then proceeded with the interview, which ended at some time between 2:00 and 3:00 p.m. on August 15, 2008. *Id*. at 17. Petitioner remained in custody after the first interrogation in the same interview room until some time between 9:00 and 10:00 p.m. At that point, the detectives returned for the second interrogation. Dkt. No. 44–7 at 12–13, 23. When the detectives returned for the second interrogation, they held up the signed *Miranda* form and said, "the rules still apply, these are still in effect." *Id*. at 23. Petitioner was questioned about the same subject during the second interrogation and voluntarily answered the detectives' questions.

The Court thus agrees with Judge Netburn's determination that the totality of the circumstances do not suggest that Petitioner's inculpatory statements were made involuntarily for the purposes of the Fifth Amendment. The Court therefore adopts Judge Netburn's recommendation that Petitioner's petition be denied with respect to his claim that the trial court erred in admitting his pretrial confessions.

## V.    The Court adopts the remainder of Judge Netburn's recommendations.

For the rest of his objections, Petitioner simply refers to his Amended Petition, Dkt. No. 58 at 19, or makes no substantive legal argument whatsoever, *id.* at 20. When a party's objection "simply reiterates a prior argument," courts will review a report and recommendation only for clear error. *Moses*, 2024 WL 3824066, at *1 (quoting *Rios*, 2023 WL 4348353, at *1). This

Court has done so for the remainder of the objections and the remainder of Judge Netburn's report and finds no clear error.

## CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Netburn's Report and Recommendation as modified and denies the Petition in its entirety.

Petitioner urges the Court to allow Petitioner to pursue review of this decision before the Second Circuit. Having found as Judge Netburn did that none of the Petitioner's reviewable claims make a substantial showing of the denial of a constitutional right, the Court adopts Judge Netburn's recommendation that no certificate of appealability should issue. The Court certifies that no appeal from this order would be taken in good faith under 28 U.S.C. § 1915(a)(3) and therefore *in forma pauperis status* is denied for the purposes of an appeal. *See Reyes v. LaManna*, 2024 WL 4553903, at *7 (S.D.N.Y. Oct. 23, 2024) (citing *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962)).


SO ORDERED.

Dated: December 4, 2024
      New York, New York                    _____
                                      LEWIS J. LIMAN
                           United States District Judge